FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 16 1998

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| ESTATE OF JAMES RONALD GOODNIGHT, by Robert and Vivian Goodnight, Co-Administrators, | * * * * |
| Plaintiff, | * * |
| vs. | * No. LR-C-98-120 |
| RAINES CHAFFIN, M.D.; JOHN SCHWANKHAUS, M.D.; ST. LOUIS-LITTLE ROCK HOSPITAL; INC.; PHP HEALTHCARE CORP.; ARKANSAS DEP'T OF CORRECTION; GWYN ATNIP, M.D.; MARVIN C. RHODE, M.D.; and LARRY NORRIS; | * * * * * * * * * |
| Defendants. | * |

## MEMORANDUM OPINION AND ORDER

This case stems from the alleged wrongful death of James Ronald Goodnight, who died while in the custody of the Arkansas Department of Correction ("ADC"). His estate brings this action pursuant to 42 U.S.C. § 1983, alleging violations of Goodnight's constitutional rights under the United States Constitution. Plaintiff also asserts state law claims of medical malpractice and violation of the Arkansas Civil Rights Act. Pending before the Court are various motions filed by the parties. Plaintiff seeks leave to amend the complaint; defendants PHP Healthcare Corporation ("PHP") and Drs. Chaffin, Rhode, and Atnip filed motions to strike the amended complaint  All the defendants, with the exception of the ADC, filed motions to dismiss. Defendant Norris filed a motion for a protective order. Having carefully

considered the motions, responses, replies, and briefs in support, the Court finds that the motion to amend[1] is granted, the motions to strike[2] are denied, the motions to dismiss[3] are granted, and the motion for protective order[4] is denied as moot.

I.

Plaintiff seeks leave to amend the complaint in order to change the jurisdictional statement, correct Goodnight's middle name, and substitute a defendant. Apparently, several of the defendants believed plaintiff had not sought leave of court and filed the amended complaint as of right, and they filed motions to strike the amended complaint. While it appears that under Fed.R.Civ.P. 15(a), plaintiff is entitled to amend the complaint because a motion to dismiss is not a responsive pleading within the meaning of Rule 15, *see Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) (motion to dismiss not responsive pleading); *Willis v. Collins*, 989 F.2d 187 (5th Cir. 1993) (same); *Lockhart v. Cedar Rapids Community School Dist.*, 963 F. Supp. 805, 810 (N.D. Iowa 1997) (same), plaintiff did seek leave to amend.[5] Thus, the motions to strike are moot.

---

[1]Docket entry 38.

[2]Docket entries 35 & 44.

[3]Docket entries 4, 6, 11, 22, 26, 33, & 39.

[4]Docket entry 13.

[5]Defendant Chaffin is the only moving defendant who filed an answer prior to plaintiff's motion to amend. In *Barksdale v. King*, 699 F.2d 744, 747 (5th Cir. 1983), the court held that the rule is that "'[w]here some but not all defendants have answered, plaintiff may amend as of course, claims asserted solely against the non-answering defendants . . . .'" (Citation omitted.) Thus, with respect to PHP, Rhode, and Atnip, plaintiff was not required to file a motion for leave to amend.

2

The Court grants plaintiff's motion for leave to amend the complaint.

II.

According to the amended complaint, James Ronald Goodnight was incarcerated at the Varner Unit of the Arkansas Department of Correction on or about May 1996. On or about June 27, 1996, he suffered one or more grand mal seizures and was transported to Southwest Hospital by ambulance. He was seen in the emergency room by Dr. McDonald who, after determining that Goodnight should be admitted, called upon Dr. Chaffin to admit and care for Goodnight.

Due to Goodnight's condition, Chaffin asked Dr. Schwankhaus, a specialist in the field of neurology, to consult. Plaintiff alleges both doctors noted a white blood cell count of 27,900 and noted "that a computerized tomography scan done of Goodnight's head was normal, even though the scan actually showed sinusitis as read by Dr. Doyne Dodd, at Baptist Medical Center." Am. Compl. at ¶ 11. Mr. Goodnight was returned to the prison system on June 28, 1996, "without any further diagnostic work-up for the source of his severe headache, the seizure activity, the infectious process or any treatment with antibiotics. Neither treating physician at Defendant St. Louis hospital, nor anyone at PHP Healthcare Corporation, made any attempt to treat the infection of the decedent with any antibiotic therapy or to follow up on the positive findings, until right before his death." Am. Comp. at ¶ 12.

Plaintiff alleges that according to prison infirmary records, Goodnight continued to complain of severe headache, cold symptoms, and sought medical care at the infirmary several times. According to the complaint, "[e]ach time he was given some sort of non-narcotic

3

analgesic and sent back to his cell, without evaluation by the prison physicians. There was no notice taken in the records at PHP of the findings by the physicians at Defendant St. Louis hospital or recommendations for treatment by any of the physicians caring for the prisoners as agents of PHP." Am. Compl. at ¶ 13.

On July 14, 1996, Goodnight was found lying in his cell "in a pool of dark green, foul smelling liquid and unresponsive." Am. Compl. at ¶ 14. According to the complaint, Goodnight was taken to the infirmary for observation and was found without respiration or pulse at 7:45 a.m. No physician was summoned to evaluate him. Efforts to resuscitate him were made but were totally unsuccessful. He was pronounced dead at 9:42 a.m. on July 14, 1996. An autopsy showed Goodnight had both chronic and acute sinusitis both of the maxillary and the sphenoid sinuses with two brain abscesses in the left frontal lobe. The brain abscesses were found to be the cause of his death.

Liberally construing the complaint, plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against defendant doctors Chaffin, Schwankhaus, Atnip, and Rhode and against Larry Norris, PHP, and the ADC. Plaintiff asserts state law claims of medical malpractice against St. Louis-Little Rock Hospitals, Inc., PHP, and defendant doctors; and state law claims pursuant to the Arkansas Civil Rights Act against Norris and PHP.

### III.

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Courts must view the

facts in the light most favorable to the plaintiff and assume that the allegations contained in the complaint are true. *Haggy v. Solem*, 547 F.2d 1363, 1364 (8th Cir. 1977). Civil rights pleadings are construed liberally. However, they must not be conclusory and must set forth facts which state a claim as a matter of law. *Nickens v. White*, 536 F.2d 802, 803 (8th Cir. 1976).

According to Fed.R.Civ.P. 8 (a), a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 (f) provides that all pleadings shall be construed "as to do substantial justice."

> In *Conley v. Gibson*, 355 U.S. 41 (1957), we said in effect that the Rule meant what it said:
> '[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests.' *Id.* at 47.

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).

IV.

The Court first addresses plaintiff's claims brought pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law . . .." Therefore, in order to state an actionable claim under § 1983, a plaintiff must show that the

5

conduct complained of has been committed under color of state law and that this conduct worked a denial of a right secured by the Constitution or laws of the United States." *See e.g., West v. Atkins*, 487 U.S. 42, 48 (1988); *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir. 1994).

A.

Although the ADC did not file a motion to dismiss, the Court finds that plaintiff's § 1983 claim against the ADC should be dismissed. The Eleventh Amendment bars such claim, *see Murphy v. State of Arkansas*, 127 F.3d 750 (8th Cir. 1997); in addition, the ADC is not a "person" amenable to suit under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (state is not a "person" within the meaning of § 1983).

B.

Plaintiff alleges Norris violated Goodnight's Eighth Amendment rights by exhibiting deliberate indifference to his medical needs. Am. Comp. ¶3. In response to Norris's motion to dismiss, plaintiff explains that further discovery is needed to determine Norris's role and responsibilities regarding medical services for inmates.

Plaintiff cannot recover against Norris on a respondeat superior theory. *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994). Plaintiff makes no allegation that Norris was deliberately indifferent toward, or was personally involved in, or had tacitly authorized unconstitutional actions on the part of PHP or the defendant physicians. *Id*. Plaintiff makes no allegation that Norris had actual knowledge of a serious risk, *see Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997), and there are no allegations of inadequate prison policies or medical supervision which, if true, would result in Norris being held liable, just as if he had failed to provide adequate medical care. *See Crooks v. Nix*, 872 F.2d 800 (8th Cir. 1989). Similarly,

there are no allegations that Norris failed to train or control subordinates who may have caused Goodnight's injury. *White v. Farrier,* 849 F.2d 322 (8th Cir. 1988). A general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability. *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995). Furthermore, while Norris may supervise the provision of medical treatment at the prison, he lacks medical expertise and cannot be liable for the medical staff's diagnostic decisions. *Id.*

In addition, mere negligence or inadvertence is insufficient to constitute deliberate indifference. *Choate v. Lockhart,* 7 F.3d 1370, 1374 (8th Cir. 1993). "Indeed, deliberate indifference requires the 'unnecessary and wanton infliction of pain.' . . . Thus, whatever its exact contours, deliberate indifference requires a highly culpable state of mind approaching actual intent." *Id.* (citations omitted). *See also Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (mere negligence or medical malpractice insufficient to rise to a constitutional violation). Plaintiff alleges nothing which rises to the level of deliberate indifference on the part of Director Norris and thus fails to state a claim for relief against him.

C.

Plaintiff alleges PHP was negligent and deliberately indifferent to Goodnight's medical needs. Am. Comp. ¶ 18. In response to the motion to dismiss, plaintiff asserts that the fact that Goodnight died "opens the door for investigation to be sure that prisoner was not denied any medical care and when a person dies from a simple, treatable illness . . . further investigation is warranted." Pl's. Resp. to PHP and Rhode M. to Dismiss, ¶ 8.

A corporation, like a municipality or any other employer, cannot be liable under § 1983 for the actions of its employees solely under a theory of respondeat superior. *Monell v.*

7

*Dep't Social Services*, 436 U.S. 658 (1978). However, an entity may be held liable for constitutional deprivations upon a showing that the entity has established or implemented an unconstitutional policy or custom which is causally related to the violation of constitutional rights. *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985). While plaintiff complains generally about PHP physicians, plaintiff makes no allegations of any policy or practice on the part of PHP which caused Goodnight's death. Thus, plaintiff has failed to state a § 1983 claim for relief against PHP.

### D.

Plaintiff alleges the PHP doctors violated his constitutional rights. Plaintiff asserts generally that PHP physicians failed to take notice of the findings or recommendations of the physicians at Southwest Hospital and failed to make any attempt at follow-up care or to examine Goodnight when he continued to have medical problems. Plaintiff names as defendants Drs. Rhode and Atnip, who are employed by PHP; however, plaintiff makes no specific allegation against Rhode or Atnip in the complaint. Plaintiff states Goodnight sought medical care at the prison infirmary several times, was given some medicine and sent back to his cell, without evaluation by the prison physicians. Am. Compl. at ¶ 13. Thus, there is no allegation that Rhode or Atnip was personally involved in any decision regarding Goodnight's treatment much less that they possessed an actual subjective knowledge of the risk of harm to Goodnight or possessed the culpable state of mind approaching actual intent to cause harm. Such a showing is required for a claim of deliberate indifference. *See Choate v. Lockhart, supra; see also Dulany v. Carnahan, supra.*

To the extent that plaintiff alleges the doctors' responses were insufficient, such allegation, without more, simply constitutes disagreement with the medical care rendered and thus fails to state a claim of deliberate indifference. *See Smith v. Marcantonio,* 910 F.2d 500, 502 (8th Cir. 1990).

E.

With respect to Chaffin and Schwankhaus, the doctors who treated Goodnight at Southwest Hospital, plaintiff alleges Goodnight was returned to the prison infirmary "without any further diagnostic work-up for the source of his severe headache, the seizure activity, the infectious process or any treatment with antibiotics." Am. Comp. at ¶ 12. To the extent that this allegation can be read to assert a claim under § 1983 against Chaffin and Schwankhaus, the Court finds that plaintiff fails to state a claim for relief. "[P]hysicians working in state prisons, who help fulfill that state's Eighth Amendment obligation to inmates and who typically are the only health professionals available to care for incarcerated persons, are persons who may fairly be said to be state actors." *Montano v. Hedgepeth,* 120 F.3d 844, 849-50 (8th Cir. 1997). However, plaintiff makes no allegation that Chaffin and Schwankhaus are state actors, and

> [i]t is well settled that a private party may be held liable on a § 1983 claim if 'he is a willful participant in joint action with the State or its agents.' In construing that test in terms of the allegations necessary to survive a motion to dismiss, this circuit has held that a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor.

9

*Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993). Plaintiff makes no allegation that there was a meeting of the minds or a mutual understanding between the private doctors and the doctors associated with PHP to deprive Goodnight of reasonable medical care.

F.

To the extent that plaintiff's complaint can be read to assert a § 1983 complaint against St. Louis-Little Rock Hospital, Inc., the Court finds that plaintiff has failed to state a claim against the hospital. Even assuming the hospital was a "state actor" for purposes of § 1983, a corporation, like a municipality or any other employer, cannot be liable under § 1983 for the actions of its employees solely under a theory of respondeat superior. *Monell v. Dep't Social Services, supra; Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993). While an entity may be held liable for constitutional deprivations upon a showing that the entity has established or implemented an unconstitutional policy or custom which is causally related to the violation of constitutional rights, *Sanders, supra; Patzner v. Burkett, supra*, plaintiff makes no allegations of any policy or practice on the part of the hospital which caused Goodnight's death. Thus, plaintiff has failed to state a § 1983 claim for relief against St. Louis-Little Rock Hospital.

Because plaintiff's factual allegations fail to allege a violation of the Constitution or federal law, the Court finds that the motions to dismiss plaintiff's claims pursuant to 42 U.S.C. § 1983 should be granted.

V.

Title 28 United States Code Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy . . . ." The statute goes on to provide that a district court may decline to exercise supplemental jurisdiction in certain circumstances. *See* 28 U.S.C. § 1367(c)(3) ("the district court has dismissed all claims over which it has original jurisdiction . . ."). Because the Court dismisses plaintiff's federal law claims, it declines to exercise supplemental jurisdiction over the state law claims. It appears to the Court that the opportunity is available to plaintiff to pursue both the medical malpractice claims[6] and the claims under the Arkansas Civil Rights Act in state court. The Court, therefore, dismisses the state claims without prejudice.

VI.

IT IS THEREFORE ORDERED that the motions to dismiss be and are hereby granted. Judgment will be entered accordingly.

DATED this 16th day of June 1998.

_____
UNITED STATES DISTRICT JUDGE

S DOCUMENT ENTERED ON DOCKET SHEET IN
APLIANCE WITH RULE 58 AND/OR 79(a) FRCP
6/16/98      BY

---

[6]The statute of limitations for a medical malpractice claim is two years. *See* Ark.Code Ann. § 16-114-203 (Michie 1997 Supp.)

11

```
       FILE  COPY
                                                              vjt
         UNITED STATES DISTRICT COURT
           Eastern District of Arkansas
         U.S. Post Office & Court House
            600 West Capitol, Suite 402
          Little Rock, Arkansas 72201-3325


                    June 16, 1998
```

\* \* MAILING CERTIFICATE OF CLERK \* \*

Re:   4:98-cv-00120.


True and correct copies of the attached were mailed by the clerk to the following:

```
     Ruthanne N. Murphy, Esq.
     Law Offices of Gary Green
     2311 Biscayne Drive
     Suite 300
     Little Rock, AR   72227

     Annamary Dougherty, Esq.
     Arkansas Attorney General's Office
     Catlett-Prien Tower Building
     323 Center Street
     Suite 200
     Little Rock, AR   72201-2610

     James Michael Lewis, Esq.
     Humphries & Lewis
     918 West Fifth Avenue
     Post Office Box 9068
     Pine Bluff, AR   71611-9068

     Penny Brown Wilbourn, Esq.
     Anderson, Murphy & Hopkins, L.L.P.
     First Commercial Building
     400 West Capitol Avenue
     Suite 2640
     Little Rock, AR   72201-3446

     Overton S. Anderson, Esq.
     Anderson, Murphy & Hopkins, L.L.P.
     First Commercial Building
     400 West Capitol Avenue
     Suite 2640
     Little Rock, AR   72201-3446

     William T. Marshall, Esq.
     Robinson, Staley, Marshall & Duke
```

```
First Commercial Building
400 West Capitol Avenue
Suite 2891
Little Rock, AR  72201-3415

Jason B. Hendren, Esq.
Friday, Eldredge & Clark
First Commercial Building
400 West Capitol Avenue
Suite 2000
Little Rock, AR  72201-3493

Laura Hensley Smith, Esq.
Friday, Eldredge & Clark
First Commercial Building
400 West Capitol Avenue
Suite 2000
Little Rock, AR  72201-3493

Rick T. Beard III, Esq.
Mitchell, Williams, Selig, Gates & Woodyard
320 West Capitol Avenue
Suite 1000
Little Rock, AR  72201-3525
```

cc: press, post

James W. McCormack, Clerk

Date: 6/16/98                    BY: *Vicki Jurna*